# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERNON FREDERKING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 6526 |
| v. ) | |
| ) | |
| CITY OF CHICAGO, an Illinois ) | Judge Ronald A. Guzmán |
| municipal corporation, and HOWARD ) | |
| HENNEMANN, in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

On December 31, 2008, plaintiff was terminated as an Assistant Commissioner for the City of Chicago's Department of Fleet Management ("Fleet") pursuant to a reduction in force ("RIF"). Plaintiff, who was seventy-two years old at the time and contends that the real reason for his termination was his age, has sued both the City and its then-Commissioner of Fleet, Howard Hennemann, for violating his Fourteenth Amendment rights, and the City for violating the Age Discrimination in Employment Act ("ADEA") and the Illinois Human Rights Act ("IHRA") as well. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

To defeat the City's motion as to the ADEA and IHRA claims and Hennemann's motion as to the 42 U.S.C. § 1983 Fourteenth Amendment claim, plaintiff must offer evidence that supports the inference that he was intentionally terminated because of his age. *See Glover v. U.S. Healthworks*, 326 Fed. Appx. 964, 967 (7th Cir. 2009) (stating that circumstantial evidence such as suspicious timing, biased or ambiguous statements made to or about older employees by the decision maker, the decision maker's pattern of giving better treatment to similarly situated, younger employees, and the like can support an inference of discriminatory intent for an ADEA claim); *see Zaderaka v. Ill. Human Rights Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (stating that IHRA age discrimination claims are analyzed in the same way as ADEA claims); *see also Smith v. City of Chi.*, 457 F.3d 643, 650-51 (7th Cir. 2006) (stating that a Fourteenth Amendment claim subject to rational basis review requires proof that the decision maker intentionally treated plaintiff differently than similarly situated employees outside of the class to which he belongs and "the difference in treatment was not rationally related to a legitimate state interest"); *McCann v. City of Chi.*, 968 F.2d 635, 637 (7th Cir. 1992) (noting that Fourteenth Amendment age discrimination claims are subject to rational basis review).

Viewed favorably to plaintiff, the record shows that, at the time of the RIF, Fleet had seven Assistant Commissioners, plaintiff, who was seventy-two, Gappy Ciaravino, who was sixty-five,

Martin Bonsu, who was fifty-nine, Eileen Joyce, who was forty-eight, Miriam Martinez, who was forty-six, Mark Chapulis, who was forty-two, and Darrel Reynolds, who was thirty-eight, and a Project Administrator who performed the same work as an Assistant Commissioner, John Calvano, who was forty-eight. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 44; *id.*, Ex. 3, O'Connor Dep. 10-14 (testifying that plaintiff and Calvano each managed the day-to-day operations of the vehicle shop at 101st and Stony Island, which O'Connor supervised); *id.*, Ex. 1, Hennemann Dep. 28-34; *see id.* 119-20 (testifying that Assistant Commissioner and Project Administrator are "relatively generic management [job] title[s]").)

Initially, Hennemann chose Ciaravino, Bonsu and Calvano for termination. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 32-34, 41, 43-44; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 75.) Subsequently, however, Ciaravino retired to avoid termination, so Hennemann took his name of the list. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 39, 41.) Hennemann also took Bonsu off of the list, after determining that he was paid from a fund other than the one designated for the RIF. (*Id.* ¶ 44.) In addition, Hennemann took Calvano off the list and put plaintiff on it. (*Id.* ¶ 42.)

Defendants say Hennemann substituted plaintiff for Calvano because he "honestly believe[d]" that Calvano was a better choice to run the 101st and Stony Island shop. (Defs.' Mem. Supp. Mot. Summ. J. 11; *see* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 1, Hennemann Dep. 134 (testifying that he kept Calvano at the request of Kevin Murray because Hennemann "was there to make sure that [his subordinates like Murray] had the tools necessary" to operate the Department).) However, that assertion is belied by Hennemann's testimony that plaintiff was "amongst the elite [in Fleet Management,] group knowledge and experience-wise" and "ha[d] more background experience and knowledge" than Calvano, and that, as an employee, Calvano was "apathetic at best." (Pl.'s LR

56.1(b)(3)(B) Stmt., Ex. 1, Hennemann Dep. 66-67, 134.) It is also contradicted by O'Connor's testimony that: (1) plaintiff "was better equipped to run [the 101st and Stony Island] shop" than Calvano; (2) Calvano did not have the experience to handle some of the shop's equipment issues; (3) he would have kept plaintiff instead of Calvano, if Hennemann had given him the choice; and (4) he told Hennemann he was "making a big mistake," when he heard Hennemann was going to fire plaintiff. (*Id.*, Ex. 3, O'Connor Dep. 13-14, 16-17, 23-24.)

In short, the record suggests that Hennemann's proffered reason for terminating plaintiff instead of Calvano was a pretext, but was it a pretext for age discrimination? The evidence, though not overwhelming, is sufficient to support that inference. It is undisputed that the three oldest Assistant Commissioners, plaintiff, Ciaravino and Bonsu, were slated for the RIF at some point during the process, and the four youngest, Joyce, Chapulis, Martinez and Reynolds, were not. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 32-34, 29, 41-44; *id.*, Ex. 1, Hennemann Dep. 28-34; *id.*, Ex. 7, Reduction-In-Force Notification.) Second, the record shows that just before or during the RIF process, Hennemann promoted Eileen Joyce and Mark Chapulis, who were in their forties, to Assistant Commissioner, and hired Walter West, who was also in his forties, to run one of the Fleet shops, a job that plaintiff could have done but about which he was not told. (*Id.*, Ex. 1, Hennemann Dep. 155-59; *id.*, Ex. 3, O'Connor Dep. 20-21; *id.*, Ex. 2, Pl. Dep. 50-51; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 77, 80-81.) Third, it is undisputed that Calvano did the same work as plaintiff but is more than twenty years younger and was paid nearly $9,000.00 more annually than plaintiff. (Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 1, Hennemann Dep. 120; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 75.) Fourth, Hennemann gave different reasons for terminating plaintiff at different times, *i.e.*, that he honestly believed Calvano was the better choice for job, that he kept Calvano instead

4

of plaintiff solely at Murray's request and he terminated plaintiff because plaintiff's job had become redundant. (*Id.*, Ex. 1, Hennemann Dep. 124-26; Defs.' Mem. Supp. Mot. Summ. J. 11; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 104.) Taken together and viewed in plaintiff's favor, this evidence is sufficient to defeat summary judgment on the ADEA and IHRA claims asserted against the City and the § 1983 Fourteenth Amendment claim asserted against Hennemann.

That leaves the § 1983 Fourteenth Amendment claim asserted against the City, which can be held liable only if there is evidence to suggest that the alleged constitutional violation resulted from the execution of one of its policies. *Monell v. Dep't of Soc. Servs. City of N.Y.*, 436 U.S. 658, 694 (1978). A "policy," in this context, includes action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). "Final policymaking authority may be granted directly by statute or delegated or ratified by an official having policymaking authority," and "[c]ustomary practices having the force of law may be considered as proof of delegation." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999). However, the fact that an employee has "unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority." *Id.* at 739. Rather, to impose liability on the municipality, "[t]here must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.*

According to the City's Municipal Code, the Commissioner of Human Resources ("HR") is the final policymaker with respect to City employment. City Chi. Municipal Code §§ 2-74-50, 150; *see Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009) (stating that the Chicago City Council has "the authority to adopt rules regarding employment policy" and "has delegated [that] authority" to the Commissioner of HR). Moreover, though the facts suggest that Hennemann had

5

the authority to determine who would be fired in the Fleet RIF, there is no evidence to suggest that he had the power to set overall employment policy for Fleet or any other City department. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 1, Hennemann Dep. 100-02, 113-24, 137-41; *id.*, Ex. 7, Reduction-In-Force Notification.) Therefore, the Court grants the City's motion for summary judgment on the § 1983 Fourteenth Amendment claim asserted against it.

**Conclusion**

For the reasons set forth above, the Court grants defendants' motion for summary judgment [41] as to the § 1983 Fourteenth Amendment claim asserted against the City and denies the motion as to the § 1983 Fourteenth Amendment claim asserted against Hennemann and the ADEA and IHRA claims asserted against the City. At the next status hearing, the Court will set dates for filing the final pretrial order and trial.

**SO ORDERED.**                                    **ENTERED:  May 17, 2012**

                                                                       _____
                                                                       **HON. RONALD A. GUZMAN**
                                                                       **United States District Judge**